# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2951

_____

United States of America

*Plaintiff - Appellee*

v.

Paris Hollingshed

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: October 18, 2018
Filed: October 3, 2019

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

SMITH, Chief Judge.

Paris Hollingshed was charged with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He was tried by a jury that convicted him of Count I and acquitted him of Count II. During the trial, the government elicited hearsay testimony from a police detective regarding an

eyewitness's photo lineup identification of Hollingshed. The district court[1] admitted the evidence. The eyewitness, who identified Hollingshed, had been designated as one of the government's trial witnesses but never took the stand. Hollingshed's counsel did not object to the detective's testimony that the eyewitness identified Hollingshed from the photo lineup. On appeal, Hollingshed argues that the district court erred in admitting the photo lineup identification in violation of his Sixth Amendment right to confrontation. He also argues the jury's verdict was not supported by sufficient evidence. And, Hollingshed challenges the district court's imposition of domestic violence and anger management treatments as conditions of supervised release. Finally, in supplemental briefing, Hollingshed argues that application of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), to his case requires vacatur of his conviction or a new trial. We affirm.

## I. *Background*

In the spring of 2015, Chavonte Bragg purchased drugs from Hollingshed. During the transaction, Hollingshed carried a .38 caliber revolver. At a later date, Bragg purchased a 9mm handgun and a .45 caliber handgun from Hollingshed. Hollingshed separately delivered the ammunition for the .45 caliber handgun to Bragg in a sock. Bragg was subsequently arrested on weapons and drug charges. When arrested, Bragg possessed the 9mm handgun he says he purchased from Hollingshed. Bragg pleaded guilty to the charges and agreed to cooperate with authorities in this case against Hollingshed. Bragg told police he purchased the handgun from Hollingshed and testified to that fact at trial.[2]

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

[2]Presumably the majority of Bragg's testimony was elicited by the government pursuing a conviction on Count II, which was for possession of the 9mm handgun and which resulted in an acquittal. The jury's hearing and weighing of the evidence, though, is not divided by count; therefore, we cannot exclude it from consideration, as relevant, to Count I.

On August 18, 2015, after receiving two disturbance calls from the same residence in Davenport, Iowa, the Davenport Police Department began looking for a person that a witness at the scene observed with a handgun. According to the witness's description, the suspect wore an orange T-shirt and stood near a white Chevrolet Camaro. The police, while en route to the calls' location, passed and then pursued a white Dodge Challenger. The Challenger bore some resemblance to the reported Camaro. The driver—Hollingshed—wore a red T-shirt. The next day, the eyewitness came to the police station and viewed a photo lineup of possible suspects related to the disturbance calls. The witness identified Hollingshed as the man he had observed with a gun.

Based on the disturbance call and positive lineup identification, the police obtained a search warrant for Hollingshed's residence. On August 20, 2015, police executed the warrant and found the following: drug trafficking paraphernalia, including inositol (used to make crack cocaine), a small digital scale, a vacuum sealer, a roll of unused vacuum-sealer bags, and a partially cut vacuum sealed bag. The vacuum sealer was dusted for fingerprints. Only Hollingshed's fingerprints were found on the vacuum sealer. In the basement rafters, the police found an empty gun box for a .45 caliber firearm. Officers also found a drawstring bag containing two tube socks and a digital scale outside near the apartment's front basement window and below a bush. One of the socks contained .38 caliber ammunition. The other sock contained a .38 caliber revolver inside a vacuum-sealed bag. According to the government's evidence, the cut line on the partial bag found inside the apartment and the cut line on the vacuum-sealed bag containing the .38 caliber revolver "match[ed] up identically with one another," indicating they originated as one bag. Redacted Tr., Vol. II, at 112, *United States v. Hollingshed*, No. 3:16-cr-00034 (S.D. Iowa, Oct. 26, 2017), ECF No. 132. The basement window hinges appeared recently used and loose, and the bag was within reaching distance from the basement through the window.

Based on this evidence, the police arrested Hollingshed for possessing the firearm. While in jail, Hollingshed spoke by phone with his girlfriend, Dedrica Doolin. The call was recorded. During the call, Hollingshed told Doolin that "a person with a gun license can take it," meaning "that someone that has a permit or someone that has a gun license could take the gun, take the charge." Redacted Tr., Vol. III, at 6, *United States v. Hollingshed*, No. 3:16-cr-00034 (S.D. Iowa, Oct. 26, 2017), ECF No. 133. Thereafter, Doolin told Hollingshed to "tell them it's mine." *Id.* Later in the call, Hollingshed suggested to Doolin that one of her family members could claim ownership and responsibility for the gun found in the bush.

Hollingshed was charged with two counts of being a felon in possession, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In Count I, Hollingshed was charged with possessing the .38 caliber revolver recovered from his residence on August 20, 2015. In Count II, Hollingshed was charged with possessing the 9mm handgun that he sold to Bragg sometime between February 1, 2015, and April 22, 2015.

During trial, Doolin testified that she owned the .38 caliber revolver. Doolin said that she put the vacuum-sealed gun with no ammunition outside of her back basement window. According to Doolin, she put the ammunition that she had obtained with the gun in a junk drawer at her mother's house and not outside the window. In rebuttal, the government introduced Hollingshed's recorded conversation with Doolin. Contrary to Doolin's testimony, when officers discovered the gun, it was located outside the front basement window, and the ammunition was located in a box inside of a sock outside that window.

Also at trial, Detective Bryan Butt of the Davenport Police Department testified about the disturbance calls that led to officers' discovery of Hollingshed. Hollingshed's counsel cross-examined Detective Butt about who made the disturbance calls and what information the callers provided. Counsel showed Detective Butt the

dispatch log to refresh his recollection. Counsel then questioned Detective Butt about talking to the eyewitness the following day to clarify the description of the person that possessed the gun. During this line of questioning, counsel pointed out inconsistencies between the eyewitness's statement and the officers' observations of Hollingshed.

On redirect examination, the government moved to admit the dispatch log and photo lineup into evidence. The photo lineup included the eyewitness's initials and the date by Hollingshed's picture. Hollingshed's counsel responded, "No objection." Redacted Tr., Vol. II, at 63. In response to questioning, Detective Butt identified Hollingshed as the individual that the eyewitness identified from the photo lineup. Hollingshed's counsel apparently planned to cross-examine the eyewitness about the accuracy and reliability of his identification later during the trial. At the time, counsel expected the eyewitness to testify because he appeared on the government's witness list. As it turned out, the government did not call the eyewitness. The jury ultimately convicted Hollingshed on Count I for possessing the .38 caliber revolver.

## II. *Discussion*

In his opening appellate brief, Hollingshed raises three points. First, he argues the district court plainly erred by admitting the government's eyewitness photo lineup identification through Detective Butt's redirect testimony because the eyewitness did not testify at trial. That identification, Hollingshed says, is testimonial hearsay that violates his Sixth Amendment right to confrontation and is therefore reversible error. Second, Hollingshed contends that the jury's verdict rests on insufficient evidence. And third, as to sentencing, Hollingshed argues the district court abused its discretion by imposing similar domestic violence and anger management treatments as conditions during his supervised release period.

In addition, after oral argument, we granted Hollingshed's motion to file supplemental briefing on the impact, if any, of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), on Hollingshed's conviction. We will address this issue first.

A. *Impact of* Rehaif *on Hollingshed's Conviction*

During the pendency of this appeal, the Supreme Court issued its decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The Court held "that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. At issue in *Rehaif* was the appellant's knowledge of his status as an unlawful alien. *Id.* at 2194. Notably, the Supreme Court made clear that it was "express[ing] no view . . . about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here." *Id.* at 2200; *see also* 18 U.S.C. § 922(g) (listing nine categories of persons prohibited from firearms transactions involving interstate commerce).

In light of *Rehaif*, Hollingshed argues that insufficient evidence supports his conviction or, in the alternative, the district court's failure to instruct the jury regarding his knowledge of this felony status constitutes reversible error. Because Hollingshed failed to challenge the lack of a jury instruction regarding his knowledge of his felony status, we review his claim for plain error. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that, to establish plain error, a defendant must show: (1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings).

Unlike in *Rehaif*, Hollingshed is a convicted felon. *See* 18 U.S.C. § 922(g)(1). Hollingshed stipulated at trial that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year. Nonetheless, we will assume that Hollingshed's stipulation does not resolve the issue of whether he knew he was a felon. *See United States v. Benamor*, No. 17-50308, 2019 WL 4198358, at *5 (9th Cir. Sept. 5, 2019). "Here, the absence of an instruction requiring the jury to find that [Hollingshed] knew he was a felon was clear error under *Rehaif*." *Id.* (citing

-6-

*Henderson v. United States*, 568 U.S. 266, 273 (2013) (holding that the first two elements of plain error are satisfied if the error is obvious when the case is on appeal); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 328 (1987) (providing that Supreme Court decisions in criminal cases apply to all cases pending on direct review)).

However, Hollingshed does not satisfy elements three and four of the *Olano* plain-error test. *See id.* Hollingshed pleaded guilty to possession with intent to distribute cocaine in 2001, was sentenced to 78 months' imprisonment, and was imprisoned for about four years before he began his supervised release. When his supervised release was later revoked, he served an additional 15 months' imprisonment. His supervised release for the conviction was discharged in October 2011. These facts, combined with Hollingshed's phone call to Doolin while in jail, indicate that Hollingshed knew he had been convicted of "a crime punishable by imprisonment for a term exceeding one year" when he possessed the firearm in 2015. 18 U.S.C. § 922(g)(1). He thus cannot "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotations omitted). As a result, "any error in not instructing the jury to make such a finding did not affect [Hollingshed's] substantial rights or the fairness, integrity, or public reputation of the trial." *Benamor*, 2019 WL 4198358, at *5.

## B. *Confrontation Clause*

Hollingshed argues for the first time on appeal that admission of the identification evidence violated his Sixth Amendment right to confrontation. Hollingshed's counsel did not object to Detective Butt's testimony regarding the eyewitness's identification of Hollingshed. In fact, counsel stated that he had "[n]o objection" to the admission of the photo lineup identifying Hollingshed as the perpetrator. *See* Redacted Tr., Vol. II, at 63. Apparently, counsel planned to challenge the photo identification evidence through cross-examination of the eyewitness later during the trial. Unfortunately, that opportunity did not arise. The government did not

call the eyewitness. Hollingshed concedes that because he failed to lodge an objection at trial, plain error review applies. Appellant's Br. at 15; *see also United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012) ("When a defendant fails to raise a Confrontation Clause objection at trial, we review his claim for plain error." (internal quotation omitted)).[3]

"The Confrontation Clause bars admission of a witness's testimonial hearsay statements unless the witness is unavailable and the defendant has had a prior opportunity to cross examine him." *United States v. Taylor*, 813 F.3d 1139, 1149 (8th Cir. 2016). The government concedes that the eyewitness's identification from the photo lineup was testimonial.[4] Appellee's Br. at 14. But it nonetheless argues that no reversible error occurred because (1) Hollingshed's counsel opened the door during cross-examination of Detective Butt by questioning him about the lineup and interview of the eyewitness; (2) "Detective Butt's statements concerning what the eyewitness told him are not hearsay because they demonstrated the reasons for and propriety of his investigation," *id.* at 15; (3) "[t]he testimony elicited and not objected to by the defense regarding the line-up identification was purposeful and a waiver of [Hollingshed's] rights of confrontation," *id.* at 17; and (4) any error in admitting the evidence was not plain.

---

[3]Because Hollingshed concedes that plain error review applies, the "stricter standard" of the government proving that the alleged Confrontation Clause violation "is harmless beyond a reasonable doubt" is inapplicable. *See United States v. Holmes*, 620 F.3d 836, 846 (8th Cir. 2010) (holding erroneous admission of statements in search warrant affidavit by non-testifying confidential informant that he had twice seen defendant in possession of firearms at home in which firearms were discovered, in violation of defendant's Confrontation Clause rights, was not harmless error).

[4]"[Statements] are testimonial when the circumstances objectively indicate that there is no . . . emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

Assuming, without deciding, that the district court plainly erred in admitting the photo identification evidence and that Hollingshed did not waive his Confrontation Clause rights, we conclude that admission of such evidence did not affect his substantial rights. *See United States v. Morrissey*, 895 F.3d 541, 554 (8th Cir. 2018). Hollingshed has not shown prejudice in this case. *See Olano*, 507 U.S. at 734. The evidence overwhelmingly establishes that Hollingshed possessed a firearm. The government introduced Bragg's testimony. Bragg testified, as relevant to Count I, that he saw Hollingshed carry a .38 caliber revolver; that Hollingshed offered to sell Bragg guns; and that Hollingshed delivered ammunition *in a sock* with the purchase of one firearm.

In addition to Bragg's testimony, the government introduced the items found outside Hollingshed's apartment near the front basement window. Significantly, officers found a drawstring bag containing two tube socks: One sock contained .38 caliber ammunition, and the second sock contained a .38 caliber revolver inside a vacuum-sealed bag. The vacuum-sealed bag holding the revolver "match[ed] up identically with" another vacuum-sealed bag found inside the apartment. Redacted Tr., Vol. II, at 112. Only Hollingshed's fingerprints were found on the vacuum sealer located in the apartment.

Finally, the jury heard the recorded telephone conversation between Hollingshed and Doolin, in which Hollingshed suggested that someone other than him claim ownership of the .38 caliber revolver. The jury then heard Doolin's testimony claiming that she owned the gun and that she believed it was on the other side of the house.

Accordingly, we hold that any error by the district court in admitting the identification evidence did not seriously affect the fairness or integrity of the judicial proceedings on account of the great weight of other evidence presented. Consequently, Hollingshed has not established plain error.

## C. *Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence de novo, examining the record in the light most favorable to the verdict, and will reverse "only if no reasonable jury could have found [Hollingshed] guilty beyond a reasonable doubt." *United States v. Coleman*, 584 F.3d 1121, 1125 (8th Cir. 2009). In this review, we will not weigh evidence or witness credibility, because those jury determinations are "virtually unreviewable on appeal." *United States v. Alexander*, 714 F.3d 1085, 1090 (8th Cir. 2013) (quoting *United States v. Wiest*, 596 F.3d 906, 911 (8th Cir. 2010)).

An extended review of this particular issue is unnecessary. In holding that overwhelming evidence supports the jury's verdict without the presence of the erroneously admitted hearsay, *see supra* Part II.B., we also conclude that the admitted evidence was sufficient for a reasonable jury to find Hollingshed guilty beyond a reasonable doubt.

## D. *Special Conditions on Supervised Release*

Hollingshed's final contention on appeal is that the district court abused its discretion by imposing two special conditions for Hollingshed's supervised-release term following completion of his incarceration.

In preparation for sentencing, the probation office prepared a presentence investigation report (PSR) that recounted Hollingshed's criminal history. According to the PSR, in 1996, Hollingshed, age 16, was convicted of assault; however, the circumstances of the offense are unknown. On December 12, 1998, Hollingshed, age 18, was arrested for domestic abuse assault on his girlfriend after allegedly pulling her hair, pushing her down the hallway, and striking her in the face. The charge was dismissed when no witnesses appeared at trial. At age 19, he was arrested again on February 28, 1999, for domestic abuse assault on his child's mother for allegedly kicking in the door to her apartment building, shoving her to the floor, punching her in the face at least three times, and threatening to kill her if she contacted law

enforcement. That charge was also dismissed when the victim recanted. On February 26, 2001, Hollingshed, age 21, reportedly assaulted his child's mother. He was originally charged with domestic abuse assault resulting in bodily injury for allegedly kicking his child's mother in the face, resulting in a black eye; however, he ultimately pleaded guilty to trespass. During Hollingshed's probationary period in 2006, the probation office reported that Hollingshed, age 26, allegedly caused a female victim to have a black eye, chased her in her vehicle, and kicked her passenger side door. Finally, on July 30, 2010, Hollingshed, age 30, was arrested for domestic abuse assault on a female for allegedly grabbing the woman by both arms and twisting her upper body in an aggressive manner, resulting in scratches on the woman's underarm. The charge was dismissed. The PSR recommended that Hollingshed "participate in an approved treatment program for anger control/domestic violence." PSR Draft at 34, ¶ 151, *United States v. Hollingshed*, 3:16-cr-00034 (S.D. Iowa April 28, 2017), ECF No. 100.

Hollingshed objected to the factual summary underlying his trespass conviction, as well as the factual summaries underlying his arrests for domestic abuse assault in 1998, 1999, and 2010. He also objected to the special condition requiring that he participate in an anger control/domestic violence treatment program. Hollingshed argued that his history did not support the special condition.

In response to Hollingshed's objections to the factual summaries, the probation officer explained that those summaries were taken from court documents and law enforcement records. As to Hollingshed's objection to the special condition requiring anger control/domestic violence treatment, the probation officer recounted the domestic abuse assault charges against Hollingshed and concluded that the special condition was necessary in light of Hollingshed's propensity towards violence. The probation officer updated the PSR to separate the anger control and domestic violence treatment.

In its sentencing memorandum, the government argued that the two special conditions were reasonably related to Hollingshed's characteristics, the deterrence of criminal conduct, the protection of the public from any further crimes of Hollingshed, and Hollingshed's correctional needs. Additionally, it maintained that the conditions did not involve any greater deprivation of liberty than is reasonably necessary to advance the sentencing concerns.

At sentencing, the district court imposed the two special conditions requiring Hollingshed to participate in anger management treatment and domestic violence treatment. The court concluded the conditions "are reasonably necessary conditions for supervision given Mr. Hollingshed's behavior problems in the past." Tr. of Proceedings at 21, *United States v. Hollingshed*, No. 3:16-cr-00034 (S.D. Iowa Oct. 3, 2017), ECF No. 128.

On appeal, Hollingshed argues that the district court erred in imposing the two special conditions because it imposed them without evidence of their need and because the conditions are not reasonably related to the goals of criminal sentencing. He notes that his offense of conviction did not involve domestic violence or the threat of violence. Thus, the only basis for the conditions are his 1996 assault conviction, 2001 trespass conviction, and the 2006 probation violation. The last of these incidents, he points out, is over ten years old. Hollingshed cites the PSR's recognition that he was referred for a mental health evaluation on August 3, 2010, and, based on that evaluation, received mental health treatment. He was discharged from treatment on September 30, 2010. As a result, he maintains that "the evidence does not support two different treatments that will likely have significant overlap." Appellant's Br. at 26.

We review for an abuse of discretion the district court's imposition of special conditions of supervised release. *United States v. Smart*, 472 F.3d 556, 558 (8th Cir. 2006).

A district court is afforded wide discretion in imposing conditions on a defendant's supervised release so long as they meet the requirements of 18 U.S.C. § 3583(d). *United States v. Boston*, 494 F.3d 660, 667 (8th Cir. 2007). Section 3583(d)(1) provides that any special condition must be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs. Furthermore, the condition may not work a deprivation of liberty that is greater than reasonably necessary for the purposes of deterring criminal conduct, protecting the public from the defendant, and treating the defendant's correctional needs. § 3583(d)(2). Finally, each condition must be consistent with pertinent Sentencing Commission policy statements. § 3583(d)(3).

*United States v. Mayo*, 642 F.3d 628, 631 (8th Cir. 2011) (per curiam).

Here, the PSR recounted the domestic abuse assault charges and allegations against Hollingshed. He objected to the PSR's factual summary underlying his trespass conviction, as well as the factual summaries underlying his arrests for domestic abuse assault in 1998, 1999, and 2010. "When a defendant objects to factual statements contained in such a report, 'the sentencing court may not rely on those facts unless the government proves them by a preponderance of the evidence.'" *United States v. Hopkins*, 824 F.3d 726, 734–35 (8th Cir. 2016) (quoting *United States v. Bowers*, 743 F.3d 1182, 1184 (8th Cir. 2014)). Therefore, we must exclude these charges and allegations from our consideration.

Nevertheless, Hollingshed's 2006 probation violation is evidence that Hollingshed continues to potentially have anger and domestic violence issues. This violation, when combined with his 1996 assault conviction, evidences a concerning pattern of behavior. These conditions, therefore, fall within the ambit of the district court's "wide discretion" to impose. *See Mayo*, 642 F.3d at 631.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____