# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1862

_____

United States of America

*Plaintiff - Appellee*

v.

Yancey J. Myers, also known as Yam

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: June 16, 2020
Filed: July 23, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Yancey Myers appeals after his jury trial and sentencing, arguing that his counsel was ineffective, insufficient evidence supported his conviction on two

counts, the district court[1] erred by admitting testimony of a co-conspirator, and the district court improperly applied a sentencing enhancement. We affirm.

In May 2017, after arriving in North Dakota by train, Myers supplied Conor Volz and his girlfriend, Mishaw Kramer, with heroin. Some time after Volz and Kramer smoked the heroin in their apartment, Volz left to go to work at the bar below the apartment where he and Kramer lived. He later returned to the apartment and gave Kramer money to purchase more heroin. Kramer drove to a hotel to meet Myers. She returned to the apartment, she and Volz smoked the heroin, and Volz became sick, vomiting on the heroin. Volz and Kramer then both went back to the hotel to purchase more heroin from Myers. They eventually returned to the apartment, smoked the heroin, and lost consciousness.

Later, Kramer was awakened by someone knocking at the apartment door. When she tried to sit up, she realized that Volz was on top of her. She answered the door but then fell asleep on the stairs while making her way back up to the apartment. After some time, she was awakened again by more knocking, at which point she went back up the stairs and attempted to awaken Volz but was unable to do so. Kramer ran downstairs to the bar where Volz worked to ask for help. An ambulance arrived at the scene, but the paramedics were unable to revive Volz, and he was pronounced dead.

A grand jury returned an indictment against Myers for conspiracy to distribute and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846 ("Count One"); distribution of a controlled substance and controlled substance analogue resulting in death in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 18 U.S.C. § 2 ("Count Two"); and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 18 U.S.C. § 2. A jury found Myers guilty on all three counts.

---

[1]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota.

Applying a two-level enhancement for possessing a firearm while distributing a controlled substance, U.S.S.G. § 2D1.1(b)(1), and a four-level enhancement for knowingly misrepresenting or knowingly marketing as another substance a mixture or substance containing fentanyl or a fentanyl analogue, *id.* § 2D1.1(b)(13), the district court calculated a total offense level of 43 and a criminal history category of III, resulting in a sentencing guidelines recommendation of life imprisonment. The district court sentenced Myers to 240 months' imprisonment on Counts One and Three and 360 months' imprisonment on Count Two, all to run concurrently.

On appeal, Myers first argues that his counsel was ineffective for failing to strike a juror and for failing to timely alert the district court to alleged contact between Volz's family members and two jurors. Ineffective-assistance-of-counsel claims "are generally left for a collateral attack, except in exceptional cases in which the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice." *United States v. Saguto*, 929 F.3d 519, 525 (8th Cir. 2019) (internal quotation marks omitted).

The district court has not had the opportunity to address Myers's ineffective-assistance-of-counsel arguments and thus did not develop a record to address them. *See United States v. Oliver*, 950 F.3d 556, 566 (8th Cir. 2020) ("There is no such record in this case because the district court neither convened an evidentiary hearing nor analyzed the potential merit of the claim." (internal quotation marks omitted)). Myers offers no reason why waiting to consider these arguments until a collateral attack would result in a miscarriage of justice, and we conclude that it would not. We thus do not consider his ineffective-assistance-of-counsel argument. *See id.* (observing that declining to consider the claim on direct appeal did not result in a plain miscarriage of justice because the defendant remained free to pursue an ineffective assistance claim through a 28 U.S.C. § 2255 action).

Next, Myers argues there was insufficient evidence to support his conviction on Counts One and Two. "We review a challenge to the sufficiency of the evidence de novo, examining the record in the light most favorable to the verdict, and will

reverse only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Hollingshed*, 940 F.3d 410, 417 (8th Cir. 2019) (internal quotation marks omitted). "[W]e will not weigh evidence or witness credibility, because those jury determinations are virtually unreviewable on appeal." *Id.* (internal quotation marks omitted).

Myers's conviction on Count One for conspiracy to distribute a controlled substance required the Government to prove "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Davis*, 867 F.3d 1021, 1033 (8th Cir. 2017). "An agreement to join a conspiracy to distribute a controlled substance need not be explicit and can be inferred from the facts of the case." *Id.* (internal quotation marks omitted). The Government "need only establish a tacit understanding between the alleged co-conspirators, which may be shown through circumstantial evidence." *United States v. Hamilton*, 929 F.3d 943, 946 (8th Cir. 2019). "The conspiracy need not be a discrete, identifiable organizational structure, but may rely on a loosely knit, non-hierarchical collection of persons who engaged in a series of transactions involving distribution-quantities of drugs in and around a particular city over a course of time." *Id.* (internal quotation marks and brackets omitted).

Here, Kramer testified that Myers offered her and Volz free heroin if they sold heroin for him. She said that Volz "sold a couple half grams" but then stopped because he never received the free heroin. Another witness, Jordan Ritter, testified that Myers gave him heroin to sell and told him, "go take care of it and then come back when you have the money." Ritter testified that this happened on more than ten occasions. Myers also introduced Ritter to Christopher Drumgoole so he could buy heroin from Drumgoole while Myers was not in town. Myers told Drumgoole that Ritter was one of his customers and that Drumgoole should "take care of him."

Other witnesses offered testimony similar to that of Ritter and Kramer. Shannon Fenster testified that he acted as a middleman for Myers, meaning he found customers to purchase heroin from Myers. Hannah Volz, Conor's sister, testified that she found heroin customers for Myers "a couple times." Zachary Smith, who picked up Myers from the train station when he arrived in North Dakota, said that Myers asked him to help find customers. Smith did so, introducing Myers to "one or two" heroin customers.

Taking this evidence in the light most favorable to the verdict, *see Hollingshed*, 940 F.3d at 417, a reasonable jury could conclude that Myers intentionally agreed with others to distribute drugs. We thus conclude that sufficient evidence supports Myers's conviction on Count One.

With respect to Count Two, the parties agree that Myers's conviction for distribution of a controlled substance or a controlled substance analogue resulting in death required the Government to prove that the drugs Myers sold Volz caused his death. The Government can prove the causation element in two ways: "(1) 'but-for' cause, or (2) independently sufficient cause." *United States v. Lewis*, 895 F.3d 1004, 1010 (8th Cir. 2018). Causation can be proven "if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so." *Burrage v. United States*, 571 U.S. 204, 211 (2014).

Myers argues the Government failed to prove causation because Volz had in his system heroin that he smoked the day before and other substances like codeine that may have caused his death, and because the heroin he sold Volz may not have contained acryl fentanyl.[2] We disagree.

---

[2]We doubt that the Government was required to prove the heroin contained acryl fentanyl as Myers seems to suggest given that § 841(b)(1)(C) requires only that a schedule I or II controlled substance, such as heroin with or without acryl fentanyl, caused death or serious bodily injury.

Kramer testified that after she and Volz smoked their first batch of heroin from Myers, she "fell out," meaning she went to sleep for several hours because the heroin was "really strong." When Fenster picked up Myers and took him to the hotel, Myers told Fenster to be careful when using the heroin he gave him because it was "really strong," suggesting that the heroin may have been mixed with another substance such as acryl fentanyl. Myers explained to Fenster that he had two types of heroin— a "stronger kind" for people who could handle it and a kind that was not as strong for those who could not. Myers told Fenster that he had warned Volz to be careful with the heroin he gave him because it was stronger. Fenster confirmed that, when he used the heroin from Myers on that occasion, he could feel "something different to it" because he "would go into withdrawals . . . sooner." Fenster also testified that after learning of Volz's death, Myers told Fenster on multiple occasions that he was sorry about Volz's death and that he did not intend for it to happen.

North Dakota State Forensic Examiner William Massello sent a sample of Volz's blood to a lab for analysis. Based on the results, he concluded that the cause of death "was combined opioid drug poisoning due to the use of diacetylmorphine, or heroin, and acryl fentanyl." Small plastic bags recovered from near Volz's body after his death tested positive for a mixture of heroin and acryl fentanyl. Massello performed an autopsy on Volz's body and found no other disease, infection, or other condition that would have contributed to his death in any way. Forensic toxicologist Ayako Chan-Hosokawa testified that her lab tested Volz's blood. Like Massello, she explained that Volz would be alive were it not for the acryl fentanyl and heroin in his blood. She emphasized that she did not "see any other reason toxicologically to say that he would have been dead without those compounds."[3]

---

[3]Myers argues that neither Massello nor Chan-Hosokawa testified about the effect of codeine, which was also found in Volz's blood and which Myers asserts could have been the cause of Volz's death. But Chan-Hosokawa testified that codeine is a "common contaminant within the manufacture of the heroin process." And the toxicology report showed that Volz's codeine level was 5.9 ng/ml and that blood concentrations of free codeine in codeine-related fatalities range from 1,000-8,800 ng/ml.

Massello testified additionally that he would expect an individual to react to a toxic dosage of heroin "within a few minutes."  Consistent with Massello's testimony, Kramer testified that soon after she and Volz smoked their last batch of heroin from Myers, they both lost consciousness, and neither Kramer nor the first responders were able to revive Myers thereafter.  *See United States v. Seals*, 915 F.3d 1203, 1206 (8th Cir. 2019) (holding that a "reasonable jury could find that the tight chain of events strongly suggested on its own that the [drug] mixture caused the overdose" where the victim "purchased a mixture of heroin and fentanyl from [the defendant], immediately drove to a gas station, injected it in the bathroom, and collapsed within seven minutes").

Taking this evidence in the light most favorable to the verdict, *see Hollingshed*, 940 F.3d at 417, a reasonable jury could conclude that the heroin Myers sold Volz contained acryl fentanyl and caused his death.  We thus conclude that sufficient evidence supports Myers's conviction on Count Two.

Next, Myers argues that the district court improperly admitted a co-conspirator statement under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  At trial, Smith testified that he called a friend in Chicago to ask him to come to North Dakota to sell drugs.  Smith testified that his friend said he would "send one of his guys."  Defense counsel objected to the testimony, arguing that it was inadmissible hearsay.  The district court overruled the objection.  Smith then testified that he later met Myers at the train station, indicating that Myers had been sent by Smith's friend to sell drugs.

We "review the district court's admission of the out-of-court statements as coconspirator statements made during and in furtherance of the conspiracy under Rule 801(d)(2)(E) for an abuse of discretion, keeping in mind that its discretion is particularly broad in a conspiracy trial." *United States v. Young*, 753 F.3d 757, 771 (8th Cir. 2014) (internal quotation marks omitted).  Even if we assume the district court improperly admitted the testimony, any error was harmless because the Government presented five witnesses who testified that Myers was involved in a

conspiracy to distribute drugs, discussed above. Smith's oblique statement was insignificant in comparison to that testimony. *See United States v. Iron Hawk*, 612 F.3d 1031, 1038 (8th Cir. 2010) ("We will not reverse a judgment on the basis of erroneous evidentiary rulings absent a showing that those rulings had a substantial influence on the jury's verdict."); *United States v. Cazares*, 521 F.3d 991, 999 (8th Cir. 2008) ("Even if these statements were admitted in error, it was harmless because the government presented additional, and much more substantial, evidence linking [the defendant] to the conspiracy . . . .").

Finally, Myers argues the district court improperly applied the four-level sentencing enhancement for knowingly misrepresenting or knowingly marketing as another substance a mixture or substance containing fentanyl or a fentanyl analogue. *See* U.S.S.G. § 2D1.1(b)(13). "We review the district court's interpretation and application of the guidelines *de novo* and its factual findings for clear error." *United States v. Sesay*, 937 F.3d 1146, 1153 (8th Cir. 2019).

The Government concedes that it was error for the district court to apply the enhancement because the district court used the incorrect version of the Guidelines Manual. Even so, the error was harmless because the district court stated it would have given the same below-guidelines sentence with or without the enhancement. *See United States v. Dace*, 842 F.3d 1067, 1069 (8th Cir. 2016) (per curiam) ("An incorrect Guidelines calculation is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence, such as when the district court indicates it would have alternatively imposed the same sentence even if a lower guideline range applied." (internal quotation marks omitted)). We thus affirm the district court's sentence.

For the foregoing reasons, we affirm.

_____