# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2876
_____

United States of America

*Plaintiff - Appellee*

v.

Brandon Dante Brooks-Davis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 23, 2020
Filed: January 7, 2021

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Brandon Brooks-Davis of two counts of aiding and abetting a felon-in-possession of a firearm in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2). The district court[1] varied downward and sentenced Brooks-Davis to 105

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

months imprisonment. He appeals his conviction and sentence. With the appeal pending, the Supreme Court held in Rehaif v. United States that, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019). On appeal, Brooks-Davis argues (1) the evidence was insufficient to convict him of either count; (2) the district court committed plain error by not instructing the jury that it must find that Brooks-Davis knew he had been convicted of a crime punishable by more than one year, as Rehaif now requires; and (3) the court committed procedural sentencing error in applying two-point enhancements for possessing three-to-seven firearms and a stolen firearm. We affirm.

## I. Sufficiency of the Evidence

In 2018, police investigating Donta Adams for drug dealing executed a warrant to search an apartment in Edina, Minnesota. Brooks-Davis emerged naked from a bedroom where he was with an adult woman. In the bedroom, officers found shorts containing a wallet with Brooks-Davis's driver's licence approximately two-feet from an Air Jordan bag containing marijuana, a digital scale, and a Glock .40 pistol. They also found a short-barrel rifle in the closet of the second bedroom and a large amount of cash and three additional firearms in a safe in the laundry room. During the search, Adams appeared at the apartment, fled, and was apprehended in an adjunct parking garage where another gun was later found.

Adams and Brooks-Davis were indicted as co-defendants. Count 1 charged both defendants with unlawful possession of "the firearms found in the safe: a Beretta . . . a Smith & Wesson . . . and a Ruger." Count 2 charged both with unlawful possession of the Glock pistol found in the Air Jordan bag. Adams pleaded guilty and testified for the government at Brooks-Davis's trial.

At trial, the government introduced the drug and firearm evidence found during the warrant search together with law enforcement officer testimony describing where the evidence was found and the actions of Brooks-Davis and Adams during and after the search. Adams then testified that he and Brooks-Davis sold drugs together and split the profits. They shared the apartment, owned the drugs found in the apartment, and both carried firearms. Adams testified Brooks-Davis stayed in the bedroom where he was found; the Air Jordan bag and Glock firearm found in the bedroom belonged to Brooks-Davis. He testified they jointly owned the safe in the laundry room and used it to store their guns and cash. The Beretta found in the safe belonged to Brooks-Davis; the Ruger, a stolen gun, belonged to Adams; and the Smith & Wesson was being held for a friend. When asked why only his fingerprints and DNA were found on the firearms, Adams testified that Books-Davis was "careful" and wore gloves or wiped the guns down. Adams was extensively cross examined by defense counsel. At the close of the government's evidence, Brooks-Davis waived his right to testify and the defense presented no evidence. The district court denied his motion for judgment of acquittal. The jury convicted him of Counts 1 and 2.

On appeal, Brooks-Davis argues the evidence was insufficient to prove he possessed the Glock pistol charged in Count 2 or any of the three firearms charged in Count 1. Alternatively, he argues the evidence was insufficient to prove he possessed the Smith & Wesson found in the safe and therefore he could not be convicted of Count 1 because the jury was instructed it must find he possessed all three guns in the safe. Our standard of review for "a claim of insufficient evidence is strict, and a jury's verdict should not be lightly overturned." United States v. Tate, 633 F.3d 624, 628 (8th Cir. 2011). We will affirm if, viewing all facts in the light most favorable to the verdict, we conclude a reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Bates, 77 F.3d 1101, 1104-05 (8th Cir.), cert. denied 519 U.S. 884 (1996).

Brooks-Davis argues there was some evidence he did not live in the Edina apartment and therefore the fact that his shorts containing his driver's licence were found near the Air Jordan bag was a coincidence. That of course was an issue for the jury to resolve. The crux of his argument is that the government's case depended on the self-serving testimony of Donta Adams, an unreliable witness. According to Brooks-Davis, cross examination established that Adams lied to the police when he first spoke to them; lied in telling the prosecutor he committed a robbery with Brooks-Davis in Oregon when it was impossible for Brooks-Davis to be in Oregon; Adams was the only one who resisted arrest; and only Adams's fingerprints and DNA were found on the firearms. Regarding the Smith & Wesson found in the safe, Brooks-Davis argues that Adams did not testify when he took possession of the gun, when it entered the safe, whether Brooks-Davis knew it was there, or that it was tied to their joint drug dealings. Despite thorough cross-examination on these issues, the jury found Adams's trial testimony regarding the guns credible. "It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." United States v. Hernandez, 569 F.3d 893, 897 (8th Cir. 2009), cert. denied, 559 U.S. 915 (2010). Its determinations are "virtually unreviewable on appeal." Id.

Adams testified that he and Brooks-Davis lived in the apartment, sold drugs together, and jointly owned the gun safe; that the Glock pistol belonged to Brooks-Davis; and that together they possessed the guns and cash found in the safe. The government's case was weakest regarding whether Brooks-Davis possessed the Smith & Wesson gun found in the safe, which Adams testified was being held for a friend. However, "[i]f two or more persons share actual or constructive possession of a thing, possession is joint." United States v. Payne, 377 F.3d 811, 815 (8th Cir. 2004), vacated on other grounds, 543 U.S. 1112 (2005). The district court correctly instructed the jury as to actual, constructive, and joint possession. Viewing the evidence in the light most favorable to the jury's verdict, we conclude the evidence was sufficient for a reasonable jury to find that Brooks-Davis constructively

possessed the Glock pistol in the Air Jordan bag and was in joint constructive possession of the three guns found in the safe.

## II. The Rehaif Issue

As Rehaif was not decided until Brooks-Davis's appeal was pending, the district court did not instruct the jury that it must find that Brooks-Davis knew of his status as a person prohibited from possessing a firearm. The Government concedes this was Rehaif error. However, Brooks-Davis did not object to the jury instruction, so our review is for plain error. Thus, Brooks-Davis must establish: "(1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." United States v. Hollingshed, 940 F.3d 410, 415 (8th Cir. 2019), cert. denied, 140 S. Ct. 2545 (2020), citing United States v. Olano, 507 U.S. 725, 734 (1993). As in Hollingshed and other recent cases, the issue turns on the last two plain error elements, whether Brooks-Davis has shown a reasonable probability the error affected his substantial rights and seriously affected the fairness of the proceedings.

The status that made Brooks-Davis's possession of a firearm or ammunition unlawful was that he "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The indictment alleged that, in 2015 and 2016, he was twice convicted of a felony, Violation of No Contact Order issued after an alleged assault of his girlfriend.[2] For the 2015 offense, he was sentenced to 15 months imprisonment but received a stay and served 79 days in jail. For the 2016 offense, he received a stayed sentence of 21 months and served

---

[2]The PSR also reported a felony assault conviction in 2010 for which Brooks-Davis received a stayed sentence and served 60 days in jail. He then received a stayed sentence of one year and one day and served 63 days in jail for a 2012 probation violation plus another 6 days in jail for a 2013 probation violation.

276 days in jail for violating probation on both offenses. At trial, to gain the evidentiary advantages of Old Chief v. United States, 519 U.S. 172, 180 (1997), Brooks-Davis entered into the following stipulation:

> The parties stipulate and agree that prior to August 7, 2018, Brandon Dante Brooks-Davis had been convicted of at least one offense punishable by a term of imprisonment exceeding one year and was thus prohibited from possessing any firearm on August 7, 2018.

The government argues that this stipulation should foreclose Brooks-Davis's plain error claim that the instruction error affected his substantial rights. Brooks-Davis argues the stipulation only establishes he was legally prohibited from possessing a firearm, not that he knew of his prohibited status. As in Hollingshed, 940 F.3d at 415, and United States v. Everett, 977 F.3d 679, 687 (8th Cir. 2020), we decline to decide whether the stipulation by itself resolves the issue of plain Rehaif error.

Brooks-Davis argues that Hollingshed and other cases rejecting claims of plain Rehaif error are distinguishable because he never served more than one year in jail for any felony conviction, unlike the defendant in Hollingshed, who served four years in prison for a drug conviction and an additional fifteen months for violating supervised release. 940 F.3d at 416. In our view, this is a distinction that does not make a plain error difference. The relevant status, § 922(g)(1), requires only a prior conviction for a crime *punishable* by imprisonment in excess of one year. Here, Brooks-Davis stipulated to that fact. The PSR established that he stood before a state court judge who imposed a stayed sentence of more than one year imprisonment on at least *three* separate occasions.[3] This record leaves no question that Brooks-Davis

---

[3]In its brief on appeal, the government states that Brooks-Davis's written guilty plea to one felony recited that "the maximum penalty that the court could impose . . .

knew he was a member of the class prohibited by § 922(g)(1).  This is not a case like United States v. Davies, 942 F.3d 871, 874 (8th Cir. 2019), where the defendant's wrongful possession offense occurred after he pleaded guilty to a prior felony but before he was sentenced, so he might not realize that he had been *convicted* of a § 922(g)(1) predicate felony.

As Brooks-Davis cannot show the district court's failure to include a Rehaif instruction affected his substantial rights or seriously affected the fairness, integrity, or public reputation of the proceedings, there was no plain Rehaif error.

## III. The Sentencing Issue

At sentencing, the district court overruled Brooks-Davis's objections to a two-level enhancement for possessing three-to-seven firearms, USSG § 2K2.1(b)(1)(A), and a two-level enhancement for possessing a stolen firearm, USSG § 2K2.1(b)(4)(A).  The court determined that the advisory guidelines sentencing range was 168 to 210 months imprisonment but granted a downward variance and imposed a 105-month sentence.  On appeal, Brooks-Davis argues the court erred in applying the two-level enhancements.  We review the court's application of the sentencing guidelines *de novo* and its factual findings for clear error.  United States v. Mathews, 784 F.3d 1232, 1236 (8th Cir.), cert denied, 577 U.S. 946 (2015).

---

is imprisonment for 21 months," and that the government did not introduce this certified record because of the Old Chief stipulation.  Brooks-Davis moves to strike this portion of the brief as "an improper, if candid, attempt to expand the record" on appeal.  We deny the motion.  Though we have not considered the guilty plea recitation, we doubt it would be improper to consider this official record in reviewing for plain Rehaif error.

Brooks-Davis's argument against both enhancements is based on his alternative arguments that the evidence was insufficient to find he constructively possessed the guns found in the safe, which included a stolen Ruger. Because we have concluded that the evidence was sufficient to convict Brooks-Davis of constructive joint possession of all three firearms named in Count 1, the district court did not clearly err in applying two-level sentencing enhancements for possessing three-to-seven guns (the Glock pistol charged in Count 2 meant he possessed a total of four guns), and for possessing a stolen gun.

The judgment of the district court is affirmed.

_____