United States Court of Appeals

For the Eighth Circuit

_____

No. 21-3942

_____

United States of America

*Plaintiff - Appellee*

v.

Donnie Spencer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: June 17, 2022
Filed: October 6, 2022

_____

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ, District Judge.[*]

_____

LOKEN, Circuit Judge.

_____

[*]The Honorable Katherine M. Mendendez, United States District Judge for the District of Minnesota, sitting by designation.

Following a two-day bench trial, the district court[1] convicted Donnie Spencer of two controlled substance offenses, and of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The court sentenced Spencer to 300 months imprisonment on the drug counts and a concurrent 120 months on the felon in possession count. Spencer appeals his conviction and sentence on the felon in possession count. Prior to trial, he stipulated to two elements of being a felon in possession of ammunition -- that he had a prior conviction for a crime punishable by imprisonment exceeding one year and knew he belonged to a class of persons barred from possessing ammunition. Thus, the issue on appeal is the third element of this offense, whether the Government proved beyond a reasonable doubt that Spencer knowingly possessed ammunition. See United States v. Obi, 25 F.4th 574, 577 (8th Cir. 2022). Spencer argues on appeal, as he did in the district court, that there was insufficient evidence that he possessed the ammunition in question, which was found in a locked safe in a closet of what Spencer described as "my bedroom" in a Davenport, Iowa home where he was not then living.

When reviewing sufficiency of the evidence, we will affirm if, "viewing all facts in the light most favorable to the verdict, we conclude a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Brooks-Davis, 984 F.3d 695, 697 (8th Cir.), cert. denied, 142 S. Ct. 161 (2021). The same standard applies in reviewing sufficiency of the evidence after a bench trial. United States v. Morris, 791 F.3d 910, 913 (8th Cir. 2015). When the defendant's knowledge is at issue, we consider the evidence in its totality and "indulge all inferences [the fact finder] could reasonably have . . . made." United States v. Serrano-Lopez, 366 F.3d 628, 636 (8th Cir. 2004). Applying this strict standard of review to the trial record, we affirm.

---

[1]The Honorable Stephanie M. Rose, Chief Judge of the United States District Court for the Southern District of Iowa.

# I.

At trial, heroin addict Heaven Wages testified that she purchased heroin from Spencer and his nephew, Rafiel Owens, for two years, including a November 2019 controlled buy from Spencer at his residence, 402 East 8th Street in Davenport. Sergeant Daniel Furlong then testified that the controlled buy occurred after a search of a Davenport hotel room where Owens was suspected of selling heroin and Wages had paid the room balance. Officers confronted Wages, who consented to the search and agreed to cooperate when drug contraband was found. After Wages's controlled buy, Furlong obtained a warrant to search 402 East 8th Street and its occupants, Spencer and his girlfriend, Wendy Sanders. The search warrant was executed on November 18, 2019 after Spencer returned from a GPS-tracked trip to Chicago. Sanders was in the residence. Drugs were found in the residence and in Spencer's shoe. Spencer was interviewed but not arrested at this time.

When Spencer then made more trips to Chicago but did not follow up on his promise to cooperate, a second warrant search of the 402 East 8th Street residence was conducted on December 11, 2019. Furlong conducted a recorded interview of Spencer that day. Furlong asked about a woman named Cozetta "Shelly" Manley and said he had a warrant to search her residence at 1025 West Locust Street in Davenport. The utilities for 1025 West Locust Street were in Spencer's name. Spencer said officers could find about $1,000 in cash inside a safe located "in his bedroom" there, and "he thought there was a weapon in there but he wasn't 100 percent sure what kind" because it had "been so long." Spencer said there was a key to the safe and helped officers obtain the key from Sanders. Furlong described Manley as Spencer's "girlfriend or just some girl he knows."

Officers then searched the 1025 West Locust Street residence. Furlong testified they found two safes stacked on top of each other in the closet of a bedroom that contained only a mattress covered in plastic. One safe could be opened with the

key obtained from Sanders; it contained nothing of evidentiary value. The other safe was forcibly opened. Officers found $1,000 in cash, mail bearing Sanders's name, and ammunition and magazines for a handgun and a rifle.

DEA task force officer Christopher Carter testified that he had a conversation with Spencer in Carter's vehicle outside 402 East 8th Street after Furlong interviewed Spencer and while 1025 West Locust Street was being searched. Carter testified that Spencer said "there was a safe at [1025 West Locust] that contained what he believed to be two guns." While interviewing Spencer, Carter learned no guns were found in the safe and asked Carter about that. "He stated he hadn't accessed the safe in approximately two years and actually physically seen the guns there and then could not recall if he possibly sold them."

Sanders testified she was in a romantic relationship with Spencer and lived with him at 402 East 8th Street at the time in question. Most of her testimony concerned the drug trafficking charges. Regarding the ammunition charge, Sanders testified she knew about Spencer's two safes located at Manley's house. Sanders had access to a combination safe that had money in it but denied knowledge of the ammunition and magazine found in one safe or how her mail got in there.

At the close of the evidence, following defense counsel's closing argument, the district court stated:

> THE COURT: Okay. I believe there's proof beyond a reasonable doubt that [Spencer] possessed the ammunition. . . . I think given the facts in this case -- that he highlights where the safe is, that it's in a house that he frequents and has access to according to his girlfriend, that he pays the utilities there, that he refers to it as his bedroom, that he says there would be two guns and that maybe he sold them, and there's two different kinds of ammunition in there -- I think that's sufficient to prove beyond a reasonable doubt that that's his ammunition.

Following closing argument by the government, the court further found Spencer guilty of the two drug trafficking counts. Those counts are not at issue on appeal.

**II.**

On appeal, Spencer argues the evidence was insufficient to prove beyond a reasonable doubt that he constructively possessed the ammunition found in the second safe. "Constructive possession is established if the person has dominion over the premises where the [ammunition is] located, or control, ownership, or dominion over the [ammunition itself]." United States v. Coleman, 909 F.3d 925, 932 (8th Cir. 2018) (quotation omitted). "In most cases, dominion, control, and knowledge may be inferred where a defendant has exclusive possession of the premises" where ammunition is found. United States v. Dooley, 580 F.3d 682, 686 (8th Cir. 2009) (quotation omitted). But where the defendant did not own or occupy the premises, as in this case, or where the premises were jointly occupied, "it takes more evidence of knowledge and control" to prove constructive possession. United States v. Ways, 832 F.3d 887, 897 (8th Cir. 2016) (quotation omitted) (ammunition in storage area of daughter's basement); see United States v. Cross, 888 F.3d 985, 991 (8th Cir. 2018) (jointly occupied family home); United States v. Ramos, 852 F.3d 747, 753-54 (8th Cir. 2017) (jointly occupied residence). In these circumstances, a "mere connection" to the residence is not enough. Ways, 832 F.3d at 898.

Here, the district court, in finding that Spencer constructively possessed the ammunition found in the safe, relied on a great deal more than a "mere connection" between Spencer and ammunition found at the residence of a girl he knew. When Sergeant Furlong asked Spencer in a recorded interview about Manley and the residence at 1025 West Locust Street, where the utilities were in Spencer's name, Spencer said there was a safe in the closet of *his bedroom*, told Furlong that Sanders had a key to open the safe, and predicted that officers would find about $1,000 in cash

and may find a "weapon" in the safe (in the later conversation with task force officer Carter, Spencer said the safe contained two guns that he may have sold). His live-in girlfriend Sanders testified that the two safes found in the bedroom closet at 1025 West Locust belonged to Spencer, that she and Spencer had access to them, and that she knew money was in one safe but had no knowledge ammunition or her mail were in either safe.

Spencer argues this evidence was not sufficient to satisfy the government's burden to prove constructive possession, relying primarily on the errors and inconsistencies in Spencer's statements to Furlong and Carter -- that there was one safe, when two safes were found; that the safe opened by Sanders's key contained nothing of evidentiary value; that no guns were found in the safes; and that Spencer did not live there, had not accessed the safe for two years, and only a mattress covered in plastic was found in what he said was his bedroom.

There certainly were gaps and inconsistencies between what Spencer told Furlong and Carter and what officers found when they searched the safes in the bedroom closet at 1025 West Locust. But resolving fact discrepancies and drawing reasonable inferences are tasks reserved for the fact finder at trial, here, the district court. See, e.g., Brooks-Davis, 984 F.3d at 698. The errors in Spencer's testimony can be reasonably attributed to his age (70), his decades of heroin and cocaine abuse, and the likely passage of time since he had accessed the safes in the bedroom closet. Moreover, Spencer only said there "may" be a weapon or two guns that he may have sold. He did not also say the safes contained two kinds of ammunition. But that omission, whether intentional or inadvertent, does not detract from the accuracy of what he said about the location of the safes, the key that would open one of them, and the cash that would be found. A piece of mail in the safe bearing the name of Spencer's live-in girlfriend, Sanders, does not establish her lack of credibility, as Spencer argues. Rather, if anything, the presence of mail to his live-in girlfriend

tends to heighten the inference that Spencer knowingly possessed what was found in the safe.

Viewing the evidence in the light most favorable to the district court's verdict, as we must, we conclude that Spencer's statements to officers Furlong and Carter, when combined with the other evidence presented at trial including the testimony of Sanders, are sufficient for a rational factfinder to find beyond a reasonable doubt that Spencer constructively possessed the ammunition found in the second safe.

The judgment of the district court is affirmed.

_____