# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3685

_____

United States of America

*Plaintiff - Appellee*

v.

Mar D. Maluoth

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 14, 2024
Filed: November 20, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Mar Maluoth of unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). Varying upward from the advisory guidelines sentencing range, the district court[1] sentenced Maluoth to 70 months

_____

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

imprisonment and a three-year term of supervised release. He appeals, arguing (1) the evidence presented at trial was insufficient to convict and (2) the court abused its discretion by imposing a substantively unreasonable sentence. We affirm.

## I. Sufficiency of the Evidence

Maluoth argues the evidence presented at trial was insufficient for a reasonable jury to find that he knowingly possessed the machinegun. We review this issue *de novo*, "view[ing] the evidence in the light most favorable to the guilty verdict [and] granting all reasonable inferences that are supported by that evidence." United States v. Waln, 916 F.3d 1113, 1115 (8th Cir. 2019) (quotation omitted). "[W]e will affirm if, after viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Henderson, 11 F.4th 713, 715 (8th Cir. 2021) (citation omitted), cert. denied, 142 S. Ct. 1696 (2022). "If the evidence adduced at trial rationally supports conflicting hypotheses, we will refuse to disturb the conviction." United States v. Muhammad, 819 F.3d 1056, 1060 (8th Cir.) (cleaned up, quotation omitted), cert. denied, 580 U.S. 893 (2016). "[T]he presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." Id. (cleaned up, quotation omitted). We will summarize the trial evidence in the light most favorable to the jury verdict.

On September 23, 2022, Omaha police officers surveilling a house as part of their search for an escaped convict saw a black Kia enter the alley behind the house. A black male matching the convict's description left the house carrying what appeared to be a rifle. The Kia then left, likely with the man inside. An officer who witnessed these movements relayed the information to Officer Ryan Sillman, parked nearby, who then followed the Kia in his unmarked police car. When Sillman saw the Kia "roll through" a stop sign, he radioed Officer Dylan Belter and his partner,

Detective Barnes, to conduct a traffic stop in their marked police cruiser, advising that one of the persons in the vehicle may be armed.

Officer Belter and Detective Barnes conducted a traffic stop, remaining "hypervigilant" as they approached the vehicle. They observed the front passenger, later determined to be Maluoth, lean forward and appear to be "tucking something or trying to hide contraband." Officer Belter arrived at the front passenger door and commanded Maluoth to cease reaching. Ignoring Belter's commands, Maluoth partially opened then closed his window and continued his "furtive" movements, turning toward the center console, reaching toward the console and the floor area, and then reaching into his pockets. Officer Belter, who had training and experience with movements indicating the hiding of contraband or weapons, opened the car door, removed Maluoth from the front passenger seat, and handcuffed him.

Officer Belter and Officer Sillman, who had arrived at the traffic stop, determined there was sufficient cause to search the area of the Kia's front passenger seat for contraband to see what Maluoth may have been trying to hide or discard. Under the front passenger seat, Officer Belter found a loaded Glock handgun with an extended magazine and a "switch" that made the firearm a "machinegun" as defined in 26 U.S.C. § 5845(b). The machinegun was placed close to the front of the seat with the barrel pointed toward the back seat. Officer Belter testified that this placement suggested the firearm was not likely placed there by a backseat passenger. The firearm's serial number had been obliterated.

At trial, testifying in his own defense, Maluoth denied placing the machinegun under the seat and offered no explanation for how it came to be in the car. He explained his "furtive" movements were attempts to locate his lighter and cigarettes while he was intoxicated and on the phone. On cross examination, he conceded he was the only male to enter the vehicle in the alley and the only male in the vehicle when it was stopped. He provided conflicting testimony whether he heard Officer

Belter's oral commands and, contradicting Officer Belter's testimony and bodycam video evidence, denied that he reached toward the floor of the vehicle.

Maluoth was convicted of transferring or possessing a machinegun. "Possession may be either actual or constructive . . . [and] may be joint." United States v. Wells, 721 F.2d 1160, 1162 (8th Cir. 1983). "Constructive possession of a firearm . . . may be established with circumstantial evidence." United States v. Butler, 594 F.3d 955, 965 (8th Cir. 2010). Constructive possession is established if an individual "has dominion over the premises where the [firearm is] located, or control, ownership, or dominion over the [firearm itself]." United States v. Spencer, 50 F.4th 685, 688 (8th Cir. 2022) (quotation omitted).

On appeal, Maluoth argues the government failed to present sufficient evidence of constructive possession because (1) he did not own the Kia, (2) the machinegun was not visible in the dark under the front passenger seat, and (3) he was not the only one in the car, undercutting any claim he had exclusive control of the area. Relying on our decision in United States v. Parker, Maluoth further argues that furtive movements can establish knowing possession when "such movements move the inference of possession beyond speculation," but not if "they are not directly connected to the gun's location or to the defendant's constructive possession of the vehicle." 871 F.3d 590, 603 (8th Cir. 2017). These contentions cannot survive our many constructive possession precedents.

Parker involved a firearm found outside the vehicle on the path traveled while fleeing police "after the chase ended." Id. at 602. We reversed the conviction of defendant Black, a passenger in the vehicle, for insufficient evidence of actual or constructive possession. We rejected the government's argument that Black's "furtive movements" inside the vehicle prior to the chase "move[d] the inference of possession beyond speculation. . . . [T]hey [were] not directly connected to the gun's location or to the defendant's constructive possession of the vehicle." Id. at 603.

-4-

Here, by contrast, Maluoth's furtive movements were directly connected to the firearm's location in the vehicle and were suggestive of concealment, which prompted Officer Belter to search under the front passenger seat and find the machinegun.

We have repeatedly held that "testimony that the defendant may have placed something in the spot where the police later found the weapon can support a finding of possession." United States v. Flenoid, 718 F.2d 867, 868 (8th Cir. 1983), and cases cited; see United States v. Chatmon, 742 F.3d 350, 353 (8th Cir. 2014), and cases cited; Muhammad, 819 F.3d at 1059-61. Here, weighing the inconsistent testimony of Maluoth and Officer Belter regarding the furtive movements, Maluoth's disregard of commands, and the location and placement of the firearm, a reasonable jury could find that Maluoth knowingly possessed the firearm found under the Kia passenger seat he had occupied. As in Flenoid, the jury "was entitled to decide whose testimony it would believe. . . . The police officer's testimony provided sufficient evidence to support the conviction." 718 F.2d at 869. We will not disturb its verdict.

## II. Sentencing Issues

Maluoth's Presentence Investigation Report (PSR) recommended a Base Offense Level of 18, a two-level increase for obstruction of justice, see USSG § 3C1.1, and a Criminal History Category III, resulting in an advisory guidelines sentencing range of 41 to 51 months imprisonment. Maluoth did not object to the PSR. He sought a downward variance, arguing that the base offense level resulted from a series of guidelines amendments inconsistent with "the sentencing commission's proper institutional role," and that his age and status as a first-time felon warranted a below-range sentence. The government did not object to the PSR but belatedly moved to file objections seeking a four-level increase under USSG § 2K2.1(b)(4)(B) for the firearm's obliterated serial number.

At sentencing, the district court denied the government's motion as untimely but stated that, having presided, it could consider the obliterated serial number evidence presented at trial. The court adopted the PSR without change, determined the advisory guidelines range is 41 to 51 months imprisonment, and stated it would "strongly consider an upward variance" because of the obliterated serial number testimony "and other issues I heard at trial." Defense counsel argued in support of his motion for a downward variance; the government argued for an upward variance based on the extreme dangers posed by machinegun possession and Maluoth's false testimony at trial.

The district court denied Maluoth's motion "because a downward variance would be inappropriate" given "the specific history and characteristics of the defendant." Stating it had considered "all factors outlined under 18 U.S.C. Section 3553(a)," the court varied upward, imposing a 70-month sentence because "the defendant has very little respect for the law not only because he committed the offense in this case but also because he has a history of obstructing justice," noting a 2019 prior state court obstruction conviction. "There's a variety of facts that justify an upward variance in this case, not one fact has caused me to upward vary."

Maluoth argues on appeal that the district court abused its discretion by imposing a substantively unreasonable sentence above the advisory guidelines sentencing range. His brief properly quotes the relevant standard: a district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations omitted). We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Haskins, 101 F.4th 997, 999 (8th Cir. 2024). It is "the unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range --

-6-

as substantively unreasonable." Feemster, 572 F.3d at 464 (quotation omitted). To uphold the sentence, we "do not require a district court to provide a mechanical recitation" of the factors it weighed; "it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." Id., quoting United States v. Walking Eagle, 553 F.3d 654, 659 (8th Cir. 2009).

Maluoth first argues the district court failed to consider a relevant factor that should have received significant weight -- the fact that the base offense levels for firearm offenses "have increased over the past decades to an extent that they are no longer tied to empirical data, past practice, or professional expertise." More specifically, he argues that the Sentencing Commission increased firearm guidelines from 1987 to 1990 without regard for "pre-guideline practice or any review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field." This contention is without merit.

Maluoth's base offense level of 18, found in USSG § 2K2.1(a)(5), has not changed since 1990. We agree with the district court that the 30-year-old changes cited by Maluoth do not justify a downward variance for his offense conduct in 2022. Maluoth presents no judicial authority suggesting that the current § 2K2.1(a) base offense level guidelines are inappropriate. Even if true, which we doubt, his speculative assertion that the Commission stepped outside "its institutional role to develop guidelines" ignores the significant deference to the discretion of sentencing judges that controlling Supreme Court decisions require. District courts must treat the Guidelines as the "starting point and the initial benchmark." Kimbrough v. United States. 552 U.S. 85, 108, quoting Gall v. United States, 552 U.S. 38, 49 (2007). The Sentencing Commission's recommendations "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Id. at 109, quoting Rita v. United States, 551 U.S. 338, 350 (2007). The sentencing judge has "greater familiarity with" a case than an appellate court and is therefore "in a superior position to find facts and judge their import under § 3553(a)." Id. (quotations

omitted).  The district court did not abuse its discretion in determining Maluoth's base offense level and advisory guidelines range.

Maluoth next argues that the district court abused its discretion by giving "significant weight" to trial evidence regarding the obliterated serial number on the machinegun.  "Once the court rejected the government's objection," he argues, "the obliterated serial number became an improper factor to include in the court's sentencing determination."  Maluoth cites no authority supporting this contention. We agree with the district court it is totally without merit.

A district court "'may consider relevant information . . . provided that the information has sufficient indicia of reliability to support its probable accuracy.'" United States v. Woods, 596 F.3d 445, 447-48 (8th Cir. 2010), quoting USSG § 6A1.3(a).  Here, the district court's decision to deny the government's untimely motion to modify the PSR and increase the advisory guidelines range was unrelated to the court's substantive discretion to consider relevant trial evidence in fashioning an appropriate sentence.  As we held in United States v. Jimenez-Villasenor, "[i]n cases where the district court also presided over the trial, the court may rely on evidence submitted at trial, during the sentencing hearing, and on uncontested statements from the defendant's presentence report."  270 F.3d 554, 562-63 (8th Cir. 2001) (citation omitted).  A "sentencing judge who also presided over the trial, as in this case, may base his factual findings on the trial record and is not required to hold an evidentiary hearing prior to sentencing."  United States v. Escobar, 909 F.3d 228, 241 (8th Cir. 2018) (quotation omitted).  Moreover, the district court explicitly noted that "[t]here's a variety of facts that justify an upward variance in this case," including Maluoth's perjury at trial.

Third, Maluoth argues the district court "committed a clear error of judgment in weighing [the obliterated serial number factor] against the other § 3553(a) concerns," such as his age and criminal history as a first-time non-violent felon.  We

disagree. The sentencing record demonstrates that the district court did consider Maluoth's age and criminal history. It viewed his age as an aggravating factor -- "[d]espite only being 25 years old, the defendant has already amassed enough criminal history points to place him in a criminal history category III." And Maluoth's criminal history -- a previous conviction for obstructing the administration of law coupled with perjury in this case -- led the court to "conclude that the defendant has very little respect for the law."

A district court has "wide latitude" to weigh the 18 U.S.C. § 3553(a) sentencing factors and to "assign some factors greater weight than others." Haskins, 101 F.4th at 1000 (quotations omitted). "[D]isagreement with how the district court weighed the relevant sentencing factors does not justify reversal." United States v. Jones, 71 F.4th 1083, 1087 (8th Cir. 2023) (citation omitted); see Feemster, 572 F.3d at 460. "[S]imply because the district court weighed relevant factors . . . more heavily than [Maluoth] would prefer does not mean the district court abused its discretion." United States v. Sisk, 999 F.3d 631, 636 (8th Cir. 2021) (quotation omitted). After careful review, we conclude that the district court did not abuse its substantial discretion and did not impose a substantively unreasonable sentence when it varied upward from the advisory guidelines sentencing range based on relevant § 3553(a) sentencing factors.

For the foregoing reasons, the judgment of the district court is affirmed.

_____