# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2837
_____

United States of America

*Plaintiff - Appellee*

v.

Trina Mae Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 11, 2025
Filed: January 5, 2026

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

On the eve of trial, after rejecting the government's plea agreement offer of a 120-month mandatory minimum sentence, Trina Mae Johnson pleaded guilty without a plea agreement to child torture, child neglect, child endangerment, and assaulting a minor with a dangerous weapon in violation of Minn. Stat. §§ 609.3775, 609.05, 609.378 subdiv. 1(a)(1), 609.378 subdiv. 1(b)(1), and 18 U.S.C. §§ 113(a)(2) & 3559(f)(3). See 18 U.S.C. § 1153. Three of these major crimes offenses have neither

applicable nor analogous sentencing guidelines, so determining the appropriate sentence is controlled by 18 U.S.C. § 3553(a). See 18 U.S.C. § 3742(a)(4).

The Presentence Investigation Report (PSR) determined that the advisory guidelines sentencing range for the fourth conviction, assaulting a minor with a deadly weapon, is 120 months imprisonment with a 10-year mandatory minimum. At sentencing, the government requested a 20-year sentence. Expressing remorse, Johnson urged a sentence close to the government's plea agreement offer of a 120-month mandatory minimum sentence. The district court[1] overruled PSR objections unrelated to this appeal, considered the 18 U.S.C. § 3553(a) sentencing factors at length, and imposed a sentence of 216 months imprisonment. Johnson appeals, arguing the sentence is "plainly unreasonable" because the sympathy and empathy expressed by the court in addressing victim L.D. during the sentencing hearing violated Johnson's due process right to judicial neutrality in sentencing. Concluding that the court's statements to the victim during the hearing were insufficient to establish judicial bias, we affirm.

## I. Background

In November 2020, when he was 11 years old, L.D. was placed in the foster care of Johnson. In April 2022, Johnson brought L.D. to a youth shelter, claiming he was "out of control" and harming himself. The youth shelter contacted Red Lake Minnesota Family and Child Services. An FBI investigation revealed that over the course of fifteen months, Johnson had subjected L.D. to sustained abuse, including sleep deprivation, starvation, denial of medical care, physical torture, and psychological torment. He lost 100 pounds, had multiple wounds and broken bones that improperly healed, scarring in multiple locations from being stabbed by a knife

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

and scissors on different occasions, brain injuries, and severe lasting mental and physical trauma. He was described as "completely unrecognizable" compared to when he was placed in Johnson's care. There were many serious abuses, carried out using a wide range of inhumane and violent methods. Johnson had facilitated and encouraged those around her to further the abuse, including her sisters, partner, and other foster children under her care. The abuse and L.D.'s condition were concealed during the COVID-19 pandemic by turning off his camera during online schooling, hiding him away when his sister visited, and demanding he tell others the injuries were self-inflicted under the threat of further harm to him and his family.

A federal indictment charged Johnson and four other participants in the abuse with the four federal and Minnesota offenses. Three co-defendants pleaded guilty to Count 3, child endangerment. The fourth, Johnson's sister, Bobbi Jo Johnson, did not plead guilty and was found guilty after a trial of child neglect and child endangerment. Prior to that trial, the government offered Johnson and Bobbi Jo a "wired" plea agreement, conditioned on both pleading guilty, of a 10-year mandatory minimum sentence and a maximum government-recommended sentence of 12 years. Because Bobbi Jo refused the agreement and proceeded to trial, Johnson could not accept the government's agreement. She instead pleaded guilty without an agreement. That plea is not at issue on appeal.

Prior to sentencing, Johnson argued that a sentence comparable to the 12 years proposed in the government's wired plea agreement was appropriate, claiming she was prevented from accepting the agreement by her sister's refusal. Johnson cited various mitigating factors, including prior personal traumas and post-offense rehabilitation efforts. Absent a plea agreement, the government requested a sentence of 240 months imprisonment based on the severity of the crimes, Johnson's minimization of responsibility in claiming L.D.'s misbehavior warranted punishment, and its review of various guideline provisions. The government urged the court to disregard its prior offer because it would have been non-binding on the court, and it

was offered to spare L.D. the trauma of testifying, which he was required to do at Bobbi Jo's trial.

During the sentencing hearing, the district court heard L.D.'s victim impact statement describing the treatment and lasting effects of the abuse, which was read into the record by his sister, and impact statements from L.D.'s new foster parents. After these statements, the judge directly addressed L.D.:

> There is something I want to say to you, and it is that I think you might be the strongest person I have ever come across. And I have been involved in the criminal justice system for a really long time, so I've seen some tough people. But it takes extraordinary strength to survive what you survived, and it takes a lot of strength to keep on surviving. And I am so, so glad that you did. I'm so glad that you held on.
>
> And I am really grateful to your foster family, that you landed somewhere wonderful, because I think that we are going to see every day a little bit more the kind and sweet kid that is inside of you that's already come out.
>
> One of the things that I am most struck by in the things that I've learned about you, and I've learned a lot, is the compassion that you show to other people. It's something that they talked about at Evergreen [youth shelter]. It's something that the FBI agent talked about. It's something that your family talked about. And it's something that's clear to me when you talk about how much you worry about your niece and nephew.
>
> One of the things that I've thought a lot about is that you weren't just fragile when you got to Evergreen. You were fragile when you got to Trina's house too. You had already been through more in your almost 12 years than anybody should, and that child deserved love and care and protection. That child was already struggling with a lot of stuff that you'd already been through. And it's heartbreaking that that didn't happen for you until now.

And the last thing I want to say is that I think I understand that your sister has passed away also? . . . And I'm really sorry about that. But I know that -- I know that she and everybody else in your family, whether they're here or not, is proud of you today. And I just wanted you to hear that from me.

The district court then ruled on objections raised and proceeded to consider the § 3553(a) factors, extensively balancing the mitigating and aggravating factors in detail. The court noted Johnson's prior traumas, her time already served, her efforts for rehabilitation, and how there was something "kind of unfair" about being denied the plea agreement because her sister insisted on a trial. On the other hand, the court considered the extent and duration of the abuse, her engagement of others in the crimes, and her efforts at concealment. The judge concluded:

> The reason I am not giving the 240 months requested by the government is that I think it slightly undervalues the acceptance of responsibility of the straight plea, and I want to give credit for the six months that were served in Red Lake County Jail. But any less would not give adequate weight to the trauma that [Johnson] has inflicted on such a long list of victims, the first of which is [L.D.], who I will quote again, saying "I am a kid and you're an adult, and you're supposed to take care of me." And to picture the 11-year-old and 12-year-old boy that he was enduring this for 18 months is hard to do.

The court sentenced Johnson to 216 months imprisonment, below the government's requested sentence. Johnson did not object to the court's statement to L.D., its conduct toward the defense at sentencing, or argue that judicial bias warranted the court's recusal.

## II. Discussion

On appeal, Johnson argues the district court's overwhelming empathy for victim L.D. as expressed at the sentencing hearing violated her procedural due

process right "to an impartial and disinterested tribunal," which is rooted in the "requirement of neutrality." Marshall v. Jerrico, Inc. 446 U.S. 238, 242 (1980). At or before sentencing, Johnson did not object or question the court's neutrality, whether the district judge should recuse, or whether the sentence imposed reflects undue bias and is therefore unreasonable. Therefore, she concedes that our review is for plain error. United States v. Minard, 856 F.3d 555, 557 (8th Cir. 2017) (citation omitted).

Unlike Johnson, the defendant in Minard filed a timely motion in the district court under Rule 35 of the Federal Rules of Criminal Procedure "alleging that the district court's statement to the crime victim at sentencing 'might have caused the Court to lack impartiality resulting in a harsher sentence.'" Id. at 556. But he did not object or move for recusal at sentencing, so our review was for plain error.[2] Unlike the defendant in Minard, Johnson did not file a timely Rule 35 motion to correct or reduce her sentence, so she gave the district court no opportunity to respond to her due process argument and claim of judicial partiality. Moreover, a timely claim for post-sentence relief under Rule 35 or 28 U.S.C. § 2255 would be based on the statutory bias and disqualification requirements of 28 U.S.C. §§ 144 and 455; a claimant must "utilize the procedures available to him under" those provisions. Holloway v. United States, 960 F.2d 1348, 1354 (8th Cir. 1992). "Relief under section 144 is expressly conditioned on the timely filing of a legally sufficient affidavit," and "claims under [§ 455] will not be considered unless timely made." Id. at 1355 (citations and quotations omitted). If these Holloway principles apply to the statutory claim of the bias alleged in this case, we would have no jurisdiction to consider the claim because it was not preserved in the district court. But there are cases where we have conducted plain error review of judicial bias claims first asserted

---

[2]We observed that "Minard cites no case, and we have found none, in which Rule 35 relief was granted because the sentencing judge failed to recuse *sua sponte*," Id. at 557. Not surprisingly, Johnson cites no case in which an unpreserved claim for due process relief was granted on appeal for this reason.

on appeal, and this case involves an unpreserved due process claim of judicial bias or lack of neutrality, not a statutory claim. Although the question has not been briefed nor apparently considered by any other circuit, we doubt that we have appellate jurisdiction to consider Johnson's unpreserved due process claim of judicial bias but conclude we need not decide the question.

Even if we do have jurisdiction to consider Johnson's due process claim, we conclude that it is without merit. Under plain error review, we will affirm unless "there was (1) an error, (2) that is clear and obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of judicial proceedings." United States v. Ingram, 91 F.4th 1271, 1273 (8th Cir. 2024). "[A] judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." United States v. Ali, 799 F.3d 1008, 1017 (8th Cir. 2015) (quotations omitted).

Though "[a] judge must recuse if his impartiality might reasonably be questioned because of bias or prejudice," United States v. Burnette, 518 F.3d 942, 945 (8th Cir. 2008), quoting 28 U.S.C. § 455, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id., quoting Liteky v. United States, 510 U.S. 540, 555 (1994). "Rules against 'bias' and 'partiality' can never mean to require the total absence of preconception, predispositions and other mental habits." Id. (quotation omitted). Denial of due process requiring recusal is appropriate in "various situations . . . in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," such as when "the adjudicator has a pecuniary interest in the outcome . . . [or] has been the target of personal abuse or criticism from the party before him." Withrow v. Larkin, 421 U.S.

35, 47 (1975). Judge Menendez's statements at sentencing fall far short of this high bar for establishing bias.

Focusing on the writing of "scholars" who have identified "phenomena captured by the word" empathy, Johnson argues that the empathy for victim L.D. expressed by the district court at the sentencing hearing "fell over the hard edge of fairness," and "[p]rejudice to Ms. Johnson is found in the uneasy balancing that empathy requires." This contention finds no support in reported recusal caselaw and is contrary to the principle that a judge's opinions formed "on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555. Judge Menendez's comments, directed to a young victim struggling to express the impact of the horrible abuse he had endured, understandably expressed sympathy -- and empathy -- for enduring the physical and emotional harm caused by the defendant's crime. This is not a case where the judge "shed [her] robe . . . and . . . assumed the mantle of the advocate." Reserve Mining Company v. Lord, 529 F.2d 181, 185 (8th Cir. 1976). As in Minard, we conclude there was no bias or partiality reflected when the judge spoke directly to a victim after the victim addressed the court during sentencing and expressed empathy for the harm caused by the defendant's crime. 856 F.3d 555-57. We noted in Minard that "Congress has given crime victims the statutory rights 'to be reasonably heard at any public proceeding in the district court involving . . . sentencing,' and 'to be treated with fairness and with respect for the victim's dignity and privacy.'" Id., quoting 18 U.S.C. § 3771(a)(4) and (8). A judge's impromptu statement to a victim does not demonstrate bias toward the defendant; rather, it "further[s] the congressional policy of encouraging crime victim participation in the criminal justice process." Id.

Johnson provides no basis to conclude that Judge Menendez's brief expression of sympathy and empathy toward a child who had been required to recount the

traumatic and extreme abuse he suffered, first during Bobbi Jo's trial and again in his victim impact letter at sentencing, improperly influenced the court's sentencing. After noting and weighing the relevant § 3553(a) mitigating and aggravating factors in detail, the court sentenced Johnson below the government's requested sentence, noting it would never have reduced the sentence to the non-binding agreement previously offered by the government. That the court weighed relevant sentencing factors differently than Johnson would prefer does not warrant reversal or intervention by this court. United States v. Maluoth, 121 F.4th 1158, 1165 (8th Cir. 2024).

For the foregoing reasons, the judgment of the district court is affirmed.

_____