# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1431
_____

United States of America

*Plaintiff - Appellee*

v.

Alvin Dale Boyer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: December 16, 2025
Filed: April 6, 2026

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

After a jury trial, Alvin Boyer was convicted of kidnapping and conspiracy to commit kidnapping in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(c). The district court[1] imposed two concurrent 20-year sentences. Boyer appeals his convictions and his sentence. Finding no reversible error, we affirm.

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

# I.

Alvin Boyer had been spending time with Shayla Tilton for a few weeks when Shayla's estranged husband, Freddie Tilton, sent Boyer a Facebook message. In the message, sent July 14, 2020, Freddie asked Boyer, "Why you been talking to my wife?" In a second message, he accused Boyer of sleeping with Shayla and threatened to shoot Boyer "on sight." Boyer admitted that he had messaged with Shayla but insisted he did not know she was married to Freddie. For the next few days, Freddie and Boyer continued to communicate by both phone and Messenger. At one point, Freddie directed Boyer to forward intimate photos Shayla had sent to Boyer.

On July 19, 2020, Boyer and Shayla made plans to meet at a motel. They decided that Boyer would reserve the room, and Shayla would meet him there. Shayla did not know that Boyer and Freddie were messaging at the same time. Boyer shared the plans with Freddie, and Freddie told him to tell Shayla he would message her the room number. Boyer and Freddie talked on the phone for several minutes, and Boyer sent Freddie a screenshot of his conversation with Shayla. Freddie responded, "Perfect."

Boyer went to the motel and checked in under his name. He went to the room, opened the door, and left the room receipt and key card inside. Freddie messaged Boyer, "Tell her the door is unlocked, to come in." Boyer responded, "Ok." Boyer then told Shayla he was getting in the shower, but that the door was unlocked, so she should come inside.

When Shayla got to the motel, the door to the room was cracked open. She peeked in and noticed the lights were off. When she entered, Freddie came out of the bathroom and hit her in the head with the butt of a rifle. He continued to assault her, including pointing a gun at her head, until police arrived and he fled through the window. When officers searched the motel room, they found multiple guns, blood,

pre-cut strips of duct tape, nylon rope, a propane torch with lighter fluid, a butane torch, pliers, zip ties, latex gloves, drop cloths, a black mask, and ammunition.

A few days later, Freddie messaged Boyer asking if Shayla had contacted him. Boyer responded that Shayla's family had been threatening him. Freddie told Boyer not to worry and said, "The look on [Shayla's] face was priceless." Boyer expressed concern for his own safety, but Freddie said, "If i was going to get you i already would have[.]" Freddie said Boyer had helped him out and insisted that he was "a man of [his] word." Boyer responded, "Ok that's all I need to hear."

Boyer and Freddie were both charged with kidnapping and conspiracy to commit kidnapping. At trial, Boyer's defense was that he lacked the necessary mens rea because he did not know Freddie planned to assault Shayla at the motel. In response, the government sought to introduce evidence of Boyer's pending charges in Arkansas for an alleged assault against his wife, which she claimed was due to Boyer's suspicion that she had been cheating on him. Over Boyer's objection, the evidence was admitted.

The jury found Boyer guilty on both counts. At sentencing, the district court calculated Boyer's Guidelines range to be 360 months to life. The government requested a Guidelines sentence and Boyer asked for 120 months. After hearing argument from counsel and an allocution from Boyer, the district court imposed a sentence of 240 months on each count, to run concurrently.

On appeal, Boyer challenges the admission of evidence of the pending charges, the denial of his motion for judgment of acquittal, and the substantive reasonableness of his sentence. We address each in turn.

## II.

## A.

We begin with Boyer's evidentiary challenge, which we review for abuse of discretion. United States v. Moore, 71 F.4th 678, 686 (8th Cir. 2023). "Only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict will we reverse." Id. (citation modified). Where properly admitted evidence is so overwhelming that the jury could not have been "substantially swayed" by the improperly admitted evidence, the error is harmless and we will not reverse. See United States v. Cutbank, 154 F.4th 609, 615 (8th Cir. 2025).

Boyer argues the district court erred by admitting evidence of the alleged assault against his wife because it was irrelevant under Federal Rule of Evidence 401 and more prejudicial than probative under Federal Rule of Evidence 403. The allegations were serious and simply read to the jury from a probable cause statement, elevating the risk of unfair prejudice. And whether Boyer's conduct in relation to his wife was sufficiently probative of his knowledge of Freddie's motive is a close call.

But we need not decide this issue. The remaining evidence against Boyer was substantial. First, the jury heard evidence that Boyer knew Freddie was a violent and dangerous person. Shayla testified that she told Boyer she was afraid of Freddie and wanted to leave him. She also showed Boyer the gun she bought specifically to protect herself from Freddie. Moreover, Shayla testified that Boyer himself had told her Freddie was "known to be violent." Indeed, the initial messages between Boyer and Freddie include more than one threat to Boyer: Freddie told Boyer he would shoot him "on sight," and later that he was "coming for [Boyer]." In addition, both before and after the assault, Boyer behaved in ways that demonstrated he was afraid Freddie might harm him, particularly if he did not do as Freddie demanded.

Second, the conversations between Boyer and Freddie after the assault give no indication that Boyer was either surprised or concerned by what Freddie had done. Boyer said nothing in response to Freddie's messages that read, "I'm going to kill her this time," or "My gun jammed when I tried to shoot her." Instead, Boyer wanted to make sure that he was safe after helping Freddie, and in his last message to him, Boyer went out of his way to wish Freddie well. Even if the contested evidence was admitted in error, it "did not influence or had only a slight influence on the verdict."[2] Cutbank, 154 F.4th at 615 (quoting United States v. DeMarce, 564 F.3d 989, 998 (8th Cir. 2009)).

B.

Boyer also argues the district court erred in denying his motion for judgment of acquittal, asserting the government failed to prove that he knew the purpose of the agreement to kidnap Shayla at the time he joined it.[3] He emphasizes that he "never set foot inside th[e] hotel room" and argues there was no evidence that he and Freddie ever discussed a plan to assault Shayla. According to Boyer, "only after the attack did [Freddie] inform Mr. Boyer that he wished to harm Shayla." But, as discussed, the evidence is more than sufficient for a reasonable jury to conclude that Boyer knew Freddie planned to assault Shayla—the purpose of the conspiracy to kidnap—at the time he arranged to meet her at the motel. See United States v. Vivier, 145 F.4th 892, 895 (8th Cir. 2025) (reviewing "denial of a motion for a judgment of acquittal de novo, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor" (citation modified)).

_____

[2]For the same reason, we need not consider whether Boyer preserved his objection to the admission of the evidence in the district court.

[3]On appeal, Boyer challenges the denial of a judgment of acquittal only on the conspiracy count. To the extent he challenges the sufficiency of the evidence on the substantive kidnapping count, his argument is based solely on the contention that admitting evidence of the pending charges was improper. We reject that argument for reasons stated in Section II.A.

## III.

Last, Boyer argues his sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Rexrode, 149 F.4th 977, 981 (8th Cir. 2025) (quoting United States v. Malouth, 121 F.4th 1158, 1163 (8th Cir. 2024)). A district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Malouth, 121 F.4th at 1163 (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)).

Boyer argues the district court gave improper weight to his pending assault charges and failed to give sufficient weight to the "duress" he experienced during the course of the offense conduct. But the district court specifically noted that Boyer had "[not] been convicted of those [pending charges]" when it reviewed Boyer's extensive criminal history, and the district court did consider duress. The court expressly credited Boyer's assertion that he was afraid of Freddie. For that reason, the court imposed a 240-month sentence—ten years below the advisory Guidelines range and lower than the sentence Freddie received. We see no error in how the district court exercised its broad discretion to determine an appropriate sentence.

## IV.

We affirm.

_____